JS-6

Michael R. Lozeau (SBN 142893)
Email: michael@lozeaudrury.com
Douglas Chermak (SBN 233382)
Email: doug@lozeaudrury.com
LOZEAU DRURY
1939 Harrison Street, Suite 150
Oakland, CA 94612
Phone: (510) 836-4200
Facsimile: (510) 836-4205

Attorneys for Plaintiff
CENTER FOR COMMUNITY ACTION AND
ENVIRONMENTAL JUSTICE

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR COMMUNITY ACTION AND ENVIRONMENTAL JUSTICE, a non-profit association, | Case No.: 5:25-cv-01058-SP |
| Plaintiff, | **CONSENT DECREE** |
| v. | |
| MORGAN TRUCK BODY, LLC, a limited liability corporation, | |
| Defendant. | |

## CONSENT DECREE

**WHEREAS,** Plaintiff Center for Community Action and Environmental Justice ("CCAEJ" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, dedicated to working with communities to improve the social and natural environment;

**WHEREAS**, Defendant Morgan Truck Body, LLC ("Defendant") operates an industrial facility at 7888 Lincoln Avenue in Riverside, California (the "Facility");

**WHEREAS**, the Facility's industrial activities consist of the manufacturing of dry freight van bodies and refrigerated truck bodies and the building of curtain siders, furniture/moving van bodies, cut-a-way van bodies, and stake/platform truck bodies. The Facility is categorized under Standard Industrial Classification ("SIC") Code 3713, covering truck and bus bodies.

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, *inter alia*, the following mandates: (1) develop and implement a storm water pollution prevention plan ("SWPPP") and a storm water monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the

development and application of Best Management Practices ("BMPs"), which must be included and timely updated in the SWPPP, and (3) ensure that industrial storm water discharges do not cause or contribute to exceedances of applicable water quality standards;

**WHEREAS**, on July 21, 2023, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director of the Regional Water Quality Control Board, Santa Ana Region ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ at the Facility;

**WHEREAS**, on May 1, 2025, CCAEJ filed a complaint against Defendant in the Central District of California, Civil Case No. 5:25-cv-01058 (the "Complaint");

**WHEREAS**, Plaintiff's Complaint alleges violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including Riverside County's municipal separate storm sewer system ("MS4"), which discharges into Reach 3 of the Santa Ana River (the "Receiving Waters");

**WHEREAS**, Plaintiff and Defendant (together, the "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without further proceedings; and

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

[PROPOSED] CONSENT DECREE

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2. Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3. The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4. CCAEJ has standing to bring this action.

5. The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term of this Consent Decree.

**I.   OBJECTIVES**

6. It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by CCAEJ in its 60-Day Notice and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA. The 60-day Notice and Complaint are herein incorporated to this Consent Decree by reference.

7. In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

[PROPOSED] CONSENT DECREE

## II.    AGENCY REVIEW AND CONSENT DECREE TERM

### A.    AGENCY REVIEW OF CONSENT DECREE

8.    <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (together, the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier (the "Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.    <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10.    <u>Entry of Consent Decree</u>. Promptly following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

### B.    DEFINITIONS

11.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, the following definitions apply:

      a.    "BMPs" means Best Management Practices.

      b.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

c.    "Day" or "day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

d.    "Discharge Point" means each outfall and discharge location designated in the operative SWPPP for the Facility.

e.    "Drainage Area(s)" means the drainage areas described in the operative SWPPP for the Facility as of the Effective Date.

f.    "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

g.    "Entry Date" means the day this Consent Decree is approved and entered by the Court.

h.    "MIP" means a Monitoring Implementation Plan.

i.    "PPT" means Pollution Prevention Team.

j.    "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B of the General Permit.

k.    "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

l.    "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

m.    "SWPPP" means a Storm Water Pollution Prevention Plan.

n.    "Term" means the period between the Effective Date and the "Termination Date."

o.    "Termination Date" means the latest of:

i.    July 31, 2027;

[PROPOSED] CONSENT DECREE

ii.    In the event an Action Plan (as hereinafter defined) is required per Paragraph 26 below based on sampling results from the 2026-2027 reporting year, six (6) months following complete implementation of the measures described in the Action Plan; or

iii.    Seven (7) calendar days after the conclusion of any proceeding or process to enforce the Consent Decree that is initiated prior to (a) July 31, 2027 or (b) January 31, 2028 in the event an Action Plan is required per Paragraph 26 below based on sampling results for the 2026-2027 reporting year.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.    <u>Current and Additional Best Management Practices</u>: In addition to maintaining the current BMPs at the Facility, Defendant shall (1) develop and implement BMPs identified herein, and (2) develop and implement additional BMPs necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those that achieve BAT/BCT.

13.    <u>Implemented BMPs</u>: Defendant implemented the following BMPs at the Facility prior to the Effective Date of this Consent Decree and shall keep them maintained:

a.    Performed maintenance on the drop inlet in Drainage Area ("DA") 3.

b.    Installed a Revel Environmental Manufacturing Inc. (REM) catch basin filter in the drop inlet at Discharge Point 3.

c.    Cleared vegetation in the concrete swale in DA3 and implemented enhanced housekeeping efforts to ensure that the swale is regularly clear of vegetation.

[PROPOSED] CONSENT DECREE

   d.    Cleaned the area around Discharge Point 4B and implemented
         enhanced housekeeping efforts in the path leading to the
         Discharge Point.

   e.    Installed a REM curb filtration system at Discharge Point 4B.

   f.    Trash/litter cleanup three times a week across entire Facility.

   g.    Daily removal of aluminum chips from saws and cutting areas.

   h.    Emptying recycled material and solid waste dumpsters on a
         regular basis as needed.

   i.    Implemented the following sweeping BMPs that shall remain
         implemented until the completion of the project described below
         in Paragraph 14(c):

         i.   Outside hand sweeping twice a week on main concreted
              pathway on west, south and east sides of the manufacturing
              building.

         ii.  Weekly street sweeping of concrete and paved areas on
              south and east sides of the manufacturing building.

14.    Additional Structural and Non-Structural BMPs: Defendant shall
develop and implement the following BMPs at the Facility within the associated
deadlines provided:

   a.    Within thirty (30) days of the Effective Date, replace eaves and
         downspouts on the manufacturing building, as identified in the
         Facility's current SWPPP, with non-metallic material.

   b.    Within thirty (30) days of the Effective Date, remove all industrial
         materials stored outside in DA3 and DA4; provided, however, that
         Defendant shall not be required to remove industrial materials that
         do not require a storm-resistant shelter to qualify for a condition of
         "No Exposure," consistent with and as defined in General Permit
         Section XVII.D and Appendix 2.B.4.

c.    <u>Paving and Infiltration Project</u>. Defendant shall pave (asphalt or concrete) dirt and gravel areas in the back (south) lot of the manufacturing building and implement an infiltration project that has the capacity to infiltrate all industrial storm water flows from DA1 and DA2 from an 85th percentile 24-hour storm event. Defendant shall not be required to infiltrate storm water flows that do not commingle with industrial activities or materials nor shall Defendant be required to infiltrate storm water flows from drainage areas that consist entirely of non-industrial activities and materials and/or industrial materials that do not require a storm-resistant shelter to qualify for a condition of "No Exposure," consistent with and as defined in General Permit Section XVII.D and Appendix 2.B.4. Defendant has already completed and shared with Plaintiff a conceptual grading plan and geotechnical investigation. In order to complete said project, Defendant shall complete the required tasks as follows:

i.    By July 11, 2025, Defendant shall complete a 100% design of the infiltration project.

ii.    Within seven (7) days of the completion of the 100% design, Defendant shall submit a copy of the 100% design to CCAEJ. CCAEJ shall have thirty (30) days upon receipt to provide Defendant with comments. Within thirty (30) days of receiving CCAEJ's comments, Defendant shall accept CCAEJ's comments, or, alternatively, justify in writing why any comment is not being incorporated. Any disputes as to the adequacy of the 100% design and/or Defendant's failure to incorporate CCAEJ's comments shall be resolved

8

pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. For purposes of this Paragraph 14, the 100% design shall be deemed final: (a) thirty (30) days after Defendant submits a copy of the 100% design to CCAEJ if CCAEJ does not provide any comments in that time period, (b) upon receipt by Defendant of notice from CCAEJ that CCAEJ does not have any comments on the 100% design, (c) upon confirmation by CCAEJ that Defendant has addressed CCAEJ's comments either by accepting them or adequately justifying its decision not to do so, or (d) upon completion of the dispute resolution process.

    iii.  Within thirty (30) days of finalizing the 100% design as set forth in subparagraph ii above, Defendant shall submit a complete permit application to the City of Riverside for the paving and infiltration projects.

    iv.  Within twenty-four (24) weeks of obtaining a construction permit for the paving and infiltration projects, Defendant shall complete paving and installation of the infiltration project.

15.    <u>Confirmation of BMPs</u>: Defendant shall confirm the implementation of the aforementioned BMPs as follows:

    a.    Within twenty (20) days of implementation of BMPs set forth above in Paragraphs 14(a)-(b), Defendant shall confirm to CCAEJ in writing, with digital photographs, that such BMP has been implemented as set forth above.

    b.    Defendant shall provide Plaintiff with written updates on the status of the infiltration project on the following dates: September

9

15, 2025 and within two (2) weeks of installation of the infiltration project (with digital photographs of DA1 and DA2, including photographs of any new drainage areas within DA1 and DA2 created through re-grading that are designated by Defendant as "No Exposure").

16. **Employee Training Program**. Within forty-five (45) days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility tasked with materially implementing the compliance activities of the General Permit, the Facility's SWPPP, and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit, the Facility's SWPPP, and this Consent Decree ("Training Program").

      a.    Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendant's personnel to ensure effective implementation of all BMPs at the Facility.

      b.    <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit.

      c.    Training shall be provided annually by the Facility's outside storm water consultant, and, if training is required more than annually, the outside consultant or other Designated Employee previously

trained by the outside consultant familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the General Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP.

d.  Sampling Training: Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory.

e.  Visual Observation Training: Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees.

f.  Non-Storm Water Discharge Training: Defendant shall train all Designated Employees at the Facility on the General Permit's procedures related to non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges.

g.  Employees: All Designated Employees at the Facility shall participate in the outside consultant-led or designated employee led Training Program annually or more frequently as needed to comply with this Consent Decree and/or the General Permit. New Designated Employees shall participate in the Training Program within sixty (60) days of their start date in their role as a Designated Employee.

h.  Defendant shall maintain training records to document compliance with this Paragraph and shall provide Plaintiff with a copy of

1  these records within ten (10) days of receipt of a written request

2  during the Term of this Consent Decree.

3  **B.    SAMPLING AT THE FACILITY**

4  17.    Defendant shall develop a MIP consistent with the General Permit.

5  Subject to the exceptions set forth in General Permit Section XI.C, during the Term,

6  Defendant shall collect samples of storm water discharge from each Discharge Point

7  from at least four (4) Qualifying Storm Events per Reporting Year. Such sampling

8  shall take place as soon as possible within the four (4) hour period required by

9  General Permit Section XI.B.5.

10  18.    Within thirty (30) days of the Effective Date, Defendant shall modify the

11  MIP as follows:

12  a.  Change the sampling location for DA3 to the drop inlet, which

13  represents the ultimate point of storm water discharge from the

14  drainage area.

15  b.  Begin conducting storm water sampling at the manhole adjacent to

16  Discharge Point 4B and include this discharge location in the

17  Facility's MIP.

18  19.    Notwithstanding the requirements set forth in Paragraphs 17 and 18,

19  above, if Defendant demonstrates that industrial activities and materials are not

20  exposed to storm water in DA3, DA4, or portions of DA1 and DA2 (as re-graded)

21  such that a condition of "No Exposure" exists (consistent with and as defined in

22  General Permit Section XVII.D and Appendix 2.B.4), then sampling and monitoring

23  of the respective drainage area(s) shall no longer be required consistent with General

24  Permit Section XI.C.6.c. Defendant shall confirm to CCAEJ in writing, with

25  photographs (as appropriate), that such "No Exposure" exists within the respective

26  drainage area(s) at least thirty (30) days before sampling is discontinued.

27  20.    <u>Sampling Parameters</u>: All samples collected pursuant to this Consent

28  Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should

Defendant conduct sampling of industrial storm water discharges for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit for any reason, including without limitation as a result of changed operations or a revised pollutant source assessment, such parameter shall be treated as if listed in Table 1 for the purposes of this Consent Decree, including the action plan requirements below, and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes.

21.   Laboratory and Holding Time: Except for pH samples, Defendant shall cause delivery of all samples to a California state certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136.

22.   Detection Limit: Defendant shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

23.   Reporting: Defendant shall upload complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and shall either email CCAEJ with notification of said upload or provide copies of said results to CCAEJ within thirty (30) days of receiving all results for the sampling event from the laboratory.

C.   REDUCTION OF POLLUTANTS IN DISCHARGES

24.   Table 1 Numeric Limits: Defendant shall develop and implement BMPs to reduce pollutants in storm water at the Facility to levels below those in Table 1.

**TABLE 1**

| Analytes | Values | Source of Limit |
|---|---|---|
| pH | 6.5 - 8.5 | Basin Plan |
| Total Suspended Solids | 100 mg/L | Annual NAL |
| Oil & Grease | 15 mg/L | Annual NAL |
| Zinc | 0.26 mg/L | Annual NAL |
| Iron | 1.0 mg/L | Annual NAL |
| Aluminum | 0.75 mg/L | Annual NAL |
| Nitrate + Nitrite as Nitrogen | 0.68 mg/L | Annual NAL |

25.    <u>Table 1 Exceedances</u>. An "Exceedance" of Table 1 is defined as follows: where the average concentration of any pollutant in all storm water samples during a particular reporting year from a particular Discharge Point from the Facility exceeds any numeric limit contained in Table 1.

26.    <u>Action Plan or Source Demonstration for Table 1 Exceedances</u>: As of the completion of the Paving and Infiltration Project described in Paragraph 14(c), and for the remainder of the Term, if Defendant's storm water samples demonstrate an Exceedance of Table 1 as defined above, or an exceedance of the General Permit (i.e. an exceedance of the annual NALs or instantaneous maximum NALs), Defendant shall prepare and submit to CCAEJ a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility ("Action Plan") or, in the event Defendant believes the exceedance is attributable solely to the presence of non-industrial pollutant sources or natural background sources as described in General Permit § XII(D)(2)(b)-(c), a Non-Industrial Pollutant Source Demonstration or Natural Background Pollutant Source Demonstration ("Source Demonstration") consistent with the requirements of the General Permit. The complete Action Plan or Source Demonstration shall be submitted to CCAEJ by July 31 of each year of the Term, as applicable.

a.  <u>Action Plan Requirements</u>. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s); (2) an assessment of the source of each contaminant exceedance; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than November 1 following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7) days of all of the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to CCAEJ in writing, with photographs (as appropriate), that such BMPs have been implemented as set forth in the Action Plan.

b.  <u>Action Plan Proposed BMPs</u>: The following BMPs should generally be evaluated, if appropriate, for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

i.  <u>Hydrologic Controls</u>: Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance systems or storm water retention or treatment facilities.

ii.  <u>Sweeping</u>: The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas. Upgrading the Facility's sweeper.

iii.   <u>Treatment Systems</u>: Installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

iv.   <u>Evaluation of Existing BMPs</u>:  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

c.   <u>Action Plan or Source Demonstration Review</u>: CCAEJ shall have thirty (30) days upon receipt of Defendant's complete Action Plan or Source Demonstration to provide Defendant with comments. Within thirty (30) days of receiving CCAEJ's comments to an Action Plan or Source Demonstration, Defendant shall consider each of CCAEJ's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan or Source Demonstration shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d.   Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan or Source Demonstration, as set forth in Paragraph 27 below.

[PROPOSED] CONSENT DECREE

**D.    STORM WATER POLLUTION PREVENTION PLAN REVISIONS**

27.    SWPPP Revisions:

    a.    Defendant has revised the SWPPP map for the Facility to include the following components:

        i.   Depictions of the storm water flows from the storage areas on the north and west sides of the manufacturing building in DA2.

        ii.  Depiction of the locations of the downspouts from the north side of the manufacturing building.

        iii. Showing the path connecting DA1 and DA4.

        iv. Depiction of the sump and location of the sump discharge in DA3.

    b.    Initial SWPPP Revisions: Defendant shall amend the Facility's SWPPP to incorporate all requirements in this Consent Decree.

    c.    Defendant shall submit the complete, updated SWPPP to CCAEJ within sixty (60) days of the Effective Date for CCAEJ's review and comment.

    d.    Additional SWPPP Revisions:

        i.   Within thirty (30) days after approval of any Action Plan by CCAEJ (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to CCAEJ for review and comment pursuant.

        ii.  Within thirty (30) days after any changes in industrial activities, sources of industrial pollutants, changes to Discharge Points, or other Facility changes requiring a SWPPP revision (including but not limited to, changes in

17

Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to CCAEJ review and comment.

### E.    COMPLIANCE MONITORING AND REPORTING

28.    Every Reporting Year during the Term, CCAEJ may conduct an annual site inspection ("Site Inspection") for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, the additional Site Inspection. Any Site Inspection shall occur during normal business hours, and CCAEJ will provide Defendant with at least seventy-two (72) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 54. During the wet weather inspection, CCAEJ may collect a sample of industrial storm water discharge from the Facility's designated industrial Discharge Point(s), to the extent that such discharges are occurring. CCAEJ shall collect the sample and provide a split sample to Defendant. Defendant's representative(s) may observe the split sample(s) being collected by CCAEJ's representative. CCAEJ shall be permitted to take photographs or video recordings during any Site Inspection; provided, however, that CCAEJ shall not be permitted to take photographs or video recordings that include or

1  depict Defendant personnel or any confidential, trade secret, or proprietary

2  information without Defendant's express permission.

3       29.    <u>Document Provision</u>. During the Term, Defendant shall notify and/or

4  submit documents to CCAEJ as follows:

5            a.    Defendant shall provide CCAEJ with notification of all

6                   compliance documents, monitoring and/or sampling data, written

7                   communications and/or correspondences, or any documents

8                   related to storm water quality at the Facility that are submitted to

9                   the Regional Board, the State Board, and/or any state or local

10                  agency, county or municipality. To the extent such documents or

11                  information is uploaded to SMARTS, Defendant may satisfy this

12                  requirement by providing CCAEJ with notification of said upload.

13           b.    Within fourteen (14) days of receipt by Defendant, Defendant

14                  shall send to CCAEJ any compliance document, inspection report,

15                  written communication and/or correspondence, or any other

16                  document related to storm water quality at the Facility received by

17                  Defendant from the Regional Board, the State Board, and/or any

18                  state or local agency, county, or municipality. Defendant shall

19                  email electronic copies of documents to CCAEJ at the relevant

20                  notice addresses contained below.

21    **F.    ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS,**

22    **COMPLIANCE OVERSIGHT**

23       30.    <u>Environmental Benefit Project</u>: To fund environmental project activities

24  that will reduce or mitigate the impacts of storm water pollution from industrial

25  activities occurring in and around the Santa Ana River Watershed, Defendant agrees

26  to make a payment totaling fifty thousand dollars ($50,000) to the Santa Ana

27  Watershed Association ("SAWA") for the sole purpose of implementing an

28

[PROPOSED] CONSENT DECREE

environmentally beneficial project relating to water quality improvements in the
Santa Ana River watershed. Payment shall be provided to SAWA as follows:

> Santa Ana Watershed Association
> c/o Brian J. Brady
> 1835 Chicago Ave., Suite C
> Riverside, CA 92507
> Email: bbrady@sawatershed.org

Payment shall be made by Defendant to SAWA within thirty (45) days of the Entry
Date. Defendant shall copy CCAEJ with any correspondence and a copy of the check
sent to SAWA. SAWA shall provide notice to the SETTLING PARTIES within
thirty (30) days of when the funds are utilized by SAWA, setting forth the purpose of
the funds.

31.    CCAEJ's Fees and Costs: Defendant agrees to pay a total of eighty-three
thousand dollars ($83,000) to CCAEJ to reimburse Plaintiff for their investigation
fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other
costs incurred as a result of investigating and filing the lawsuit, and negotiating a
resolution of this matter. Payment shall be made by Defendant within thirty (30) days
of the Entry Date. Payment by Defendant to CCAEJ shall be made in the form of a
single check payable to "Lozeau Drury LLP," and shall constitute full payment for all
costs of litigation, including investigative, expert and attorneys' fees and costs
incurred by CCAEJ that have or could have been claimed in connection with
CCAEJ's claims, up to and including the Entry Date. The payment shall be delivered
by certified mail or overnight carrier to Lozeau Drury LLP, c/o Michael Lozeau,
1939 Harrison Street, Suite 150, Oakland, CA 94612, unless made via wire transfer.

32.    Compliance Oversight Costs. As reimbursement for CCAEJ's future fees
and costs that will be incurred in order for CCAEJ to monitor Defendant's
compliance with this Consent Decree and to effectively meet and confer and evaluate
storm water monitoring results for the Facility, Defendant agrees to reimburse

[PROPOSED] CONSENT DECREE

CCAEJ for its reasonable fees and costs incurred in overseeing the implementation of this Consent Decree up to but not exceeding seven thousand five hundred dollars ($7,500) per Reporting Year during the Term. Fees and costs reimbursable pursuant to this Paragraph may include, but are not limited to, those incurred by CCAEJ or its counsel to meet and confer regarding proposed treatment options, review water quality sampling reports, review photographs, review annual reports, discussion with Defendant's representatives concerning potential changes to compliance requirements, preparation and participation in meet and confer sessions, and water quality sampling. For each Reporting Year, CCAEJ shall provide an invoice for any fees and costs incurred in overseeing the implementation of this Consent Decree. Payments shall be made payable to "Lozeau Drury LLP" within thirty (30) days of receipt by Defendant.

## IV.    DISPUTE RESOLUTION

33.    This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

34.    <u>Meet and Confer</u>. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the notice.

35.    <u>Conference with Magistrate</u>. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 34 above, unless otherwise extended by mutual agreement, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States

District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

36.     In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

**V.      MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

37.     <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised or that could have been raised in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

38.     <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

39.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

[PROPOSED] CONSENT DECREE

## VI.    MISCELLANEOUS PROVISIONS

40.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

41.    <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

42.    <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

43.    <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

44.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

45.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

46.  <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

47.  <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

48.  <u>Diligence</u>: Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

49.  <u>Effect of Consent Decree</u>: Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

50.  <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

51.  <u>Modification of the Consent Decree</u>. This Consent Decree, and any material provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

52.  <u>Assignment</u>. Subject only to the express conditions contained in this Consent Decree, all the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. In the event a Morgan Truck Body, LLC transferee or assign ("Morgan Truck Body Assignee") will continue industrial operations at the Facility, Defendant shall notify CCAEJ ten (10) days in advance of the proposed transfer or assignment ("the Assignment Notice") and within ten (10) days following the

Assignment Notice, Defendant will provide CCAEJ with a written assignment and assumption duly executed by Defendant and the Morgan Truck Body Assignee assigning Defendant's obligations under this Consent Decree to the Assignee.

53.    <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather (adjudged from the baseline of the Facility's average weather), economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

54.    <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

If to Plaintiff:
Ana Gonzalez
Email: ana.g@ccaej.org
CENTER FOR COMMUNITY
ACTION AND
ENVIRONMENTAL JUSTICE
P.O. Box 33124
Riverside, CA 92519
Phone: (951) 360-8451

With copies to:
Douglas Chermak
Email: doug@lozeaudrury.com
LOZEAU DRURY LLP
1939 Harrison Street, Suite 150
Oakland, CA 94612
Phone: (510) 836-4200

If to Defendant:
Phil Schull
Email:  phil@jbpco.com
J.B. Poindexter & Co., Inc.
600 Travis Street, Suite 400
Houston, TX 77002
Phone: (713) 655-9800

With copies to:
Zachary Fayne
Email: Zachary.Fayne@arnoldporter.com
ARNOLD & PORTER
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Phone: (415) 471-3114

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

[PROPOSED] CONSENT DECREE

1    IN WITNESS WHEREOF, the undersigned have executed this Consent Decree

2  as of the date first set forth below.

3

4  APPROVED AS TO CONTENT

5

6

7  Dated: July 9, 2025                    By: ___/s/_____

8                                              Ana Gonzalez
                                              Executive Director
9                                              Center for Community Action and
                                              Environmental Justice
10

11

12  Dated: July 21, 2025                   By: ___/s/_____

13                                              David Nuzzo
                                              Vice President
14                                              Morgan Truck Body, LLC

15

16  **IT IS SO ORDERED.**

17  **FINAL JUDGMENT**

18

19    Upon approval and entry of this Consent Decree by the Court, this Consent

20  Decree shall constitute a final judgment between the Plaintiff and Defendant.

21

22  Dated: September 24, 2025          CENTRAL DISTRICT OF CALIFORNIA

23

24

25  _____

26  HONORABLE SHERI PYM
    United States Magistrate Judge

27

28

[PROPOSED] CONSENT DECREE